IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUDY BURKHOLDER,                )
                                )
        Plaintiff,               )      CIVIL ACTION
                                )
v.                              )       No. 09-2322-KHV
                                )
GATES CORPORATION,              )
                                )
        Defendant.              )
_____)

**MEMORANDUM AND ORDER**

Judy Burkholder brings suit alleging that Gates Corporation discriminated against her because her husband is disabled, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Specifically, plaintiff claims that defendant did not consider her application for employment because her disabled husband could not also work for defendant. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #69) filed September 30, 2010 and Plaintiff's Motion To File Sur-Reply In Opposition To Defendant's Motion For Summary Judgment And Memorandum In Support (Doc. #80) filed December 1, 2010. In support of its motion for summary judgment, defendant argues that as a matter of law, plaintiff cannot establish a claim of associational discrimination under the ADA. In its reply memorandum, defendant also asks the Court to strike affidavits which plaintiff attaches to her opposition because plaintiff did not timely identify the witnesses who submitted them. Plaintiff seeks leave to file a surreply to refute defendant's accusation. For the reasons stated below, the Court sustains plaintiff's motion for leave to file a surreply and overrules defendant's motion for summary judgment.[1]

---

[1] Surreplies are typically not allowed, see Metzger v. City of Leawood, 144 F. Supp.2d 1225, 1266 (D.Kan.2001), but they are permitted in rare cases with leave of court. Humphries v.
(continued...)

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743

---

[1](...continued)
Williams Natural Gas Co., No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998). For example, a nonmoving party should be given an opportunity to respond to new material raised for the first time in a reply brief. Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005). For purposes of this analysis, "material" includes both new evidence and new legal arguments. Id.; Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1139 n.13 (10th Cir. 2003). If the district court does not rely on the new material in reaching its decision, it does not abuse its discretion by precluding a surreply. Green, 420 F.3d at 1196. Here, defendant – in its reply memorandum – asks the Court to strike plaintiff's supporting affidavits because they provide testimony from witnesses whom plaintiff did not timely disclose or identify. Defendant provides no evidence (such as affidavit testimony, witness lists or Rule 26 disclosures) to support its position, but does introduce a new legal argument which justifies plaintiff's surreply. In it, however, plaintiff does little better. Plaintiff argues that she timely disclosed the witnesses and attaches undated, unsigned portions of what appear to be Rule 26 disclosure forms. Given that defendant did not respond to plaintiff's motion, the Court sustains it as unopposed. See D. Kan. Rule 7.4(b) ("Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum . . . and . . . [o]rdinarily, the court will grant the motion without further notice.").

(10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [she] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on her pleadings but must set forth specific facts. Id. The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Liberty Lobby, 477 U.S. at 250-51.

**Facts**

The following facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiff.[2]

Gates Corporation is an employer subject to the ADA and has a facility in Iola, Kansas. In 2007 and 2008, Gates contracted for Environmental Excellence to provide housekeeping services at the plant. Gates had an informal policy of not hiring current employees of Environmental Excellence. It had this policy for several reasons: (1) so that Environmental Excellence could maintain a stable workforce and meet its contractual requirements with Gates; (2) because Gates did not want unsuccessful applicants for employment to be able to access its plant as employees of Environmental Excellence; (3) because Gates was concerned that if it interviewed but did not hire employees of Environmental Excellence, those employees could be disruptive of the work environment; and (4) because Gates did not want to

---

[2] Factual disputes about immaterial matters are irrelevant to a summary judgment determination. Law v. Nat'l Collegiate Athletic Ass'n, 902 F. Supp. 1394, 1398 (D. Kan. 1995). Immaterial facts and factual averments not properly supported by the record are therefore omitted.

establish a precedent that applicants who worked for Environmental Excellence would receive preference.

Teri Porter has been Human Resources Manager at the Iola plant since at least 2007. Porter reviews and selects applicants and collects and maintains employment applications and Applicant Flow Log forms. Gates requires applicants to sign the Applicant Flow Log when they submit initial job applications. Tami Comstock is Porter's assistant. Comstock files and maintains completed employment applications.

Until October of 2007, Gates had an anti-nepotism policy which prohibited it from hiring spouses of current employees. Gates eliminated this policy in late October of 2007. As a result, Shelly Sinclair and other spouses of Gates employees applied for employment with Gates. Sinclair applied on November 29, 2007. At that time, she worked for Environmental Excellence. Supervisors interviewed Sinclair and hired her effective January 1, 2008.

From August 3, 2007 until she was laid off in January of 2009, Judy Burkholder worked for Environmental Excellence at the Gates plant. On January 18, 2008, soon after Gates hired Sinclair, Burkholder applied for employment with Gates.[3] After she applied, Porter told Burkholder that Gates would not consider hiring her while she worked for Environmental Excellence. Burkholder became angry because Gates had just hired Sinclair while she worked for Environmental Excellence. Burkholder thought that Gates hired Sinclair because her husband worked for Gates and she told Porter that her husband could not work for Gates because he was disabled. Porter does not recall any

---

[3] Burkholder had also applied to Gates in July of 2007. On the application, Burkholder indicated that she preferred to work the second or third shift because her husband was disabled. Gates does not have a copy of this application in its files. Plaintiff does not base her discrimination claim on this application; she relies on it simply to establish that before she applied on January 18, 2008, Gates knew that her husband was disabled.

communications with Burkholder after this conversation. Gates never interviewed or hired Burkholder.

Burkholder submitted additional applications on March 27 and July 17, 2008, but Gates does not have those applications in its files. On those applications, she identified her husband as disabled. Burkholder's name only appears on the Applicant Flow Log for January 18, 2008, when she submitted her first application.

In 2007 and 2008, Gates received applications from several employees of Environmental Excellence. Because they worked for Environmental Excellence, Gates did not interview them. Sinclair was the only Environmental Excellence employee whom Gates interviewed and hired.

Charles Burkholder, plaintiff's husband, suffered a stroke on May 12, 2004. The stroke disabled him, as defined by the ADA, and confined him to a wheelchair. He remained disabled until his death in June of 2010. Burkholder claims that Gates would have hired her if Charles Burkholder had not been disabled and could have worked at Gates. In October of 2007, Burkholder and her son (Matthew Burkholder) recall seeing and talking to Porter while they were at the Iola Walmart with Charles Burkholder, who was in his wheelchair. That same month, Whitney Cochran, who works for Gates, saw plaintiff and her husband in a tent at a festival in Iola called Farm City Days. Cochran also saw Porter and Comstock at the festival. After saying hello to Porter and Comstock, Cochran saw them walk by the tent where plaintiff and her husband were located and look in the direction of the tent. Porter does not recall seeing Burkholder in October 2007 either at the festival or Walmart.

## **Analysis**

Gates Corporation seeks summary judgment on plaintiff's single claim of associational discrimination under the ADA, which prohibits employers from discriminating against qualified job

applicants because they associate with a disabled individual. 42 U.S.C. § 12112(a), (b)(4).[4] In an associational discrimination case which involves adverse employment action such as termination, plaintiff establishes a prima facie case of disability discrimination by demonstrating four elements: (1) plaintiff was subject to adverse employment action; (2) at the time, plaintiff was "qualified" for the job; (3) at the time the employer knew plaintiff had a relative or associate with a disability and (4) the adverse employment action occurred under circumstances which raise a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. Trujillo v. PacifiCorp, 524 F.3d 1149, 1154 (10th Cir. 2008) (citing Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997)).[5] In the context of failure to hire, the elements are articulated as follows: plaintiff must show (1) the employer rejected plaintiff; (2) plaintiff had applied and was qualified for

---

[4] 42 U.S.C. § 12112(a) states, in relevant part, that

[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Under 42 U.S.C. § 12112(b)(4),

excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association

qualifies as prohibited discrimination under 42 U.S.C. § 12112(a).

[5] This case, however, involves a claim of failure to hire, and a dearth of caselaw exists which analyzes ADA associational discrimination in this context. In fact, the Court has located only two cases. See Ard v. Prof'l Res. Mgmt., No. 2:04-CV-1189-MEF, 2006 WL 827111, at *5 (M.D. Ala. March 29, 2006) (plaintiff alleged failure to hire because of wife's known disability); Seargent v. Little Rock Sch. Dist., No. 4:09CV00213-WRW, 2010 WL 3199792, at *3-4 (E.D. Ark. Aug. 12, 2010) (plaintiff alleged failure to hire because she worked with special education students). Both cases grant summary judgment applying the framework set out in Trujillo and Den Hartog.

a job for which the employer was seeking applicants; (3) at the time the employer knew plaintiff had a relative or associate with a disability; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications, or other evidence supports an inference of discriminatory motive. See e.g.. Garrison v. Gambro, Inc., 428 F.3d 933, 937 (10th Cir. 2005); Fischer v. Forestwood Co., Inc., 525 F.3d 972, 983 (10th Cir. 2008). If plaintiff states a prima facie case, the burden shifts to defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action under the familiar McDonnell Douglas burden shifting framework.[6] Trujillo, 524 F.3d at 1154. Once defendant offers a nondiscriminatory reason, plaintiff must establish by a preponderance of the evidence that the legitimate reason offered by defendant was not the true reason, but was a pretext for discrimination. Id. at 1154-55.

Defendant seeks summary judgment, arguing that plaintiff cannot establish the third or fourth elements of a prima facie case.[7] Specifically, defendant argues that plaintiff has not established that when it declined to hire her, it knew that her husband was disabled. Defendant also argues that plaintiff has not established that the adverse employment action occurred under circumstances which raise a reasonable inference that the disability of Burkholder's husband was a determining factor in its decision not to hire her. Finally, defendant proffers a legitimate business reason for its decision not to hire plaintiff, i.e. that she worked for Environmental Excellence and was therefore ineligible to be hired by Gates.

Defendant first argues that the record contains insufficient evidence that when it declined to hire

---

[6] See McDonnell Douglas Corp. v. Green, 411 U. S. 792, 802 (1973).

[7] Defendant does not address the first two elements of the prima facie case. As such, it apparently concedes for purposes of this motion that plaintiff was (1) subject to adverse employment action (not hired) and (2) qualified for the job.

plaintiff, it knew that her husband was disabled. Specifically, defendant argues that plaintiff's evidence does not demonstrate a genuine issue of material fact on that issue. The Court disagrees. Plaintiff's evidence demonstrates a genuine issue of material fact whether, at the time it declined to hire her, Gates knew that her husband was disabled.

Defendant next argues that plaintiff has not established that adverse employment action occurred under circumstances which raise a reasonable inference that the disability of her husband was a determining factor in its decision. Mere knowledge of disability is not sufficient to overcome a summary judgment motion. Reinholm v. Am. Airlines, No. C07-1429RSL, 2009 WL 1393742, at *6 (W.D. Wash. May 15, 2009). Plaintiff, however, presents evidence that she was treated differently than a similarly-situated applicant, which raises a reasonable inference that the disability of her husband was a determining factor in its decision. See E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 800-01 (10th Cir. 2007) (showing that employer treated similarly-situated employees more favorably is one way to raise inference of discrimination). The Court therefore concludes that plaintiff has set forth a prima facie case.

The burden then shifts to defendant to proffer a legitimate, non-discriminatory reason for its decision not to hire plaintiff. Defendant states that because plaintiff worked for Environmental Excellence, she was therefore ineligible to be hired by Gates. Defendant acknowledges that before refusing plaintiff's application, it made one exception to informal policy – after eliminating a formal anti-nepotism policy which had (also) previously prevented it from hiring that employee.

Because defendant has offered a nondiscriminatory reason, plaintiff must establish by a preponderance of the evidence that the legitimate reason offered by defendant was not the true reason, but was a pretext for discrimination. Trujillo, 524 F.3d at 1154-55. To defeat summary judgment,

plaintiff's burden is only to demonstrate a genuine issue of material fact as to whether the proffered reasons were unworthy of belief. Id. at 1158. Pretext can be shown by weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and infer that the employer did not act for the asserted non-discriminatory reasons. Id. Pretext can be shown a variety of ways, including differential treatment of similarly situated employees and procedural irregularities. Id. Plaintiff argues that defendant's articulated reason was pretext because defendant hired another applicant who was also ineligible under the policy but whose husband worked for Gates and was not disabled. Plaintiff also points to procedural irregularities, i.e. that Gates cannot locate the applications which she submitted in 2007 and 2008, which identify her husband as disabled. Here, construing the evidence most favorably to plaintiff, she has identified genuine issues of material fact whether defendant's proffered reason is worthy of belief. The Court therefore overrules defendant's motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion To File Sur-Reply In Opposition To Defendant's Motion For Summary Judgment And Memorandum In Support (Doc. #80) filed December 1, 2010 be and hereby is **SUSTAINED**, and Defendant's Motion For Summary Judgment (Doc. #69), filed September 30, 2010 be and hereby is **OVERRULED.** The Court resets the status conference in this case for January 31, 2011 at 3:00 p.m. in Room 529 before Chief Judge Kathryn H. Vratil.

Dated this 14th day of January, 2011 at Kansas City, Kansas.

                                          s/ Kathryn H. Vratil
                                          Kathryn H. Vratil
                                          United States District Judge